*E-Filed: June 19, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CELINA GALINDO, ET AL.,

              Plaintiffs,

    v.

LEE TASSIO, ET AL.,

              Defendants.

_____/

No. C13-00105 HRL

**ORDER ON MOTIONS IN LIMINE**

**[Re: Docket Nos. 63-68, 77-84]**

United States District Court
For the Northern District of California

       This case arises from the fatal shooting of Valente Galindo by Officer Lee Tassio.  It is undisputed that Tassio entered the Galindo residence in pursuit of Manuel Fuentes, that Fuentes tossed a gun into Galindo's bedroom, and that Tassio shot and killed Galindo.  The parties dispute whether Galindo reached for, picked up, and/or pointed the gun at Tassio, as well as whether Tassio's use of force was reasonable.  The final pretrial conference was held on June 3, 2014, at which time the Court heard the parties' motions in limine.  With the exceptions of Tassio's motions in limine numbers one and five, which were granted on the record as part of the pretrial order, the Court deferred ruling on the motions.  *See* Dkt. No. 102.  The Court now issues the following order on the deferred motions.

    A.  Plaintiffs' Motions in Limine

       Plaintiffs move to exclude evidence of or reference to the following: (1) alleged gang activity/affiliation of Manuel Fuentes; (2) tattoos and alleged gang activity/affiliation of Galindo; (3) that the gun had been used in a prior murder; (4) Galindo's criminal record; (5) Galindo's

United States District Court
For the Northern District of California

1   employment status; (6) Galindo's use of drugs and alcohol; (7) Fuentes' guilty plea; and (8)

2   testimony of gang expert Michael Whittington.   *See* Dkt. Nos. 77-84.   Plaintiffs generally argue that

3   the evidence is irrelevant insofar as it was unknown to Tassio at the time of the shooting because it

4   is not probative of whether his use of force was objectively reasonable in view of his subjective

5   knowledge of the circumstances.   Alternatively, the evidence is improper character evidence, and in

6   any case, it should be excluded because its probative value is substantially outweighed by the risk of

7   unfair prejudice, confusion of issues and waste of time.   *See* Fed. R. Evid. 403.

8           Tassio generally asserts that the evidence is relevant to the key disputed factual issue of

9   whether Galindo reached for, picked up, and pointed the gun at him.   *See* Dkt. No. 86, Def. Opp'n.

10  His theory underlying the entire incident is that Fuentes and Galindo conspired to retain the gun in

11  the possession of their gang, El Hoyo Palmas ("EHP").   Thus, the evidence is relevant to explain

12  their actions and is probative of Galindo's motive and intent in going for the gun.

13          1.   Fuentes' Alleged Gang Activity or Affiliation

14          The Court agrees with Tassio that some evidence of Fuentes' gang affiliation is relevant to

15  the officers' state of mind, explains their actions, and ultimately bears on whether Tassio's use of

16  force was reasonable in light of the circumstances known to him at the time of the shooting.

17  Accordingly, evidence of or reference to Fuentes' gang affiliation is admissible to the extent that it

18  was known to Tassio and/or Kilmer at the time of the incident.   For example, they may testify that

19  Fuentes was wearing a Pittsburgh Pirates hat, which they know to be commonly worn by EHP

20  members.

21          As far as any additional evidence of Fuentes' gang affiliation being relevant to whether

22  Galindo reached for the gun and pointed it at Tassio, the Court thinks its probative value is marginal

23  at best and is substantially outweighed by the risk that the jury draws impermissible character

24  inferences, is misled from the more critical issues in the case, and attaches "guilt by association" to

25  Galindo.  *See, e.g., Kennedy v. Lockyer*, 379 F.3d 1041 (9th Cir. 2004) ("Our cases make it clear

26  that evidence relating to gang involvement will almost always be prejudicial and will constitute

27  reversible error. . . . [T]he use of gang membership evidence to imply 'guilt by association' is

28  impermissible and prejudicial.").   Thus, except as described above with respect information then

**United States District Court**
For the Northern District of California

1   known to the officers, evidence of or reference to Fuentes' alleged gang affiliation is excluded based

2   on Rule 403. *See, e.g., Lee v. Anderson*, 616 F.3d 803, 810 (8th Cir. 2010) ("[E]vidence of Fong

3   Lee's gang membership was, at best, marginally probative of his motive in fleeing from the officers.

4   . . . Given its low probative value and the danger of unfair prejudice, the gang affiliation evidence

5   should have been excluded."). Accordingly, Plaintiffs' motion is GRANTED IN PART and

6   DENIED IN PART.

7            2.   Galindo's Tattoos and Alleged Gang Activity Or Affiliation

8           The parties raise many of the same arguments as addressed above, and the Court likewise

9   finds that any evidence of Galindo's alleged gang affiliation known to the officers and relevant to

10   the their then existing state of mind – for example, that Galindo was wearing red, a color associated

11   with EHP – is admissible. And similarly, the Court finds that any further evidence of Galindo's

12   alleged gang affiliation is substantially more prejudicial than probative due to the very high risk that

13   the jury draws the impermissible inference that because Galindo is affiliated with a gang, he has a

14   violent, criminal disposition with which he conformed at the time of the shooting. Additionally, if

15   Tassio is allowed to introduce extraneous evidence that Galindo was a gang member or associate,

16   Plaintiffs maintain that they will to introduce evidence to rebut it. The Court will then be faced with

17   a mini trial within a trial, which further risks confusion of the issues, misleading the jury, and waste

18   of time. Thus, except as described above with respect to the officers' then existing state of mind,

19   the evidence of Galindo's alleged gang affiliation is excluded based on Rule 403. Accordingly,

20   Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

21           Furthermore, though, the Court agrees with Tassio that such gang affiliation evidence may

22   be admissible for impeachment or in rebuttal depending on whether Plaintiffs open the door to this

23   subject. Thus, should Plaintiffs introduce evidence that Galindo was not affiliated with a gang, then

24   Tassio may counter with gang affiliation evidence that is otherwise excluded.

25            3.   Unrelated Shooting Incident

26           For the same reasons as described above with respect to gang affiliation evidence generally,

27   the Court GRANTS Plaintiffs' motion to exclude evidence that the gun possessed by Fuentes was

28   previously used in a murder.

**United States District Court**
For the Northern District of California

1      4.   Galindo's Misdemeanor Criminal History and Prior Contacts with Law Enforcement

2          Tassio asserts that this evidence is "relevant to show his hostility towards law enforcement

3   to assist with explaining his intent (motives), preparation, and plan." Def. Opp'n at 6.  However,

4   Galindo's actual subjective intent in reaching for the gun is not in itself relevant to whether Tassio's

5   use of force was reasonable, and using evidence of Galindo's criminal history to prove that he had a

6   general hostility toward law enforcement that made him more likely to have reached for the gun is

7   precisely the type of character evidence the rules prohibit.  *See* Fed. R. Evid. 404(b).  To the extent

8   that Galindo's criminal history is at all indirectly probative of whether he did in fact reach for the

9   gun, it is substantially outweighed by the risk that the jury will use the evidence to draw an

10  impermissible character inference.

11         Furthermore, Galindo's criminal history is not relevant to damages.  The parties' proposed

12  jury instruction on wrongful death, CACI 3921, provides that the jury may consider the decedent's

13  "health, habits, activities, lifestyle, and occupation" in deciding the decedent's "life expectancy."

14  However, the instructions only provide that life expectancy be taken into account for economic

15  damages, and here, Plaintiffs seek only noneconomic damages.  Moreover, the Directions for Use of

16  CACI state, "This definition [of life expectancy] is intended to apply to the element of damages

17  pertaining to the financial support the decedent would have provided to the plaintiff." *See also*

18  *Cotton v. City of Eureka*, No. C 08-04386 SBA, 2010 WL 5154945, at *12 (N.D. Cal. Dec. 14,

19  2010) (noting that CACI 3921 provides for both economic and non-economic damages and finding

20  that decedent's homelessness was relevant to life expectancy determination for economic damages).

21  Thus, because Plaintiffs are not seeking economic damages, Galindo's criminal history is not

22  relevant to the damages inquiry.  Accordingly, Plaintiffs' motion is GRANTED.

23     5.   Galindo's Unemployment and Application for Unemployment Benefits

24         Tassio only asserts that Galindo's unemployment is relevant to the life expectancy

25  determination for damages.  For the reasons discussed above, Plaintiffs' motion is GRANTED.

26     6.   Alcohol and Drugs

27         Plaintiffs move to exclude evidence of any drugs discovered at the scene, results of the

28  toxicology report, and alleged prior use of drugs by Galindo.  For the reasons discussed above,

4

**United States District Court**
For the Northern District of California

1  general use of drugs or alcohol is not relevant to the issue of damages here.  However, the Court

2  agrees with Tassio that the toxicology report is relevant to explain Galindo's behavior in view of

3  Tassio's expert's reporting that the levels of alcohol and methamphetamine in his system are

4  associated with, among other things, impaired judgment and increased risk-taking, and his opinion

5  that Galindo was under the influence of methamphetamine at the time of the shooting.  Additionally,

6  while evidence of drug use inherently carries some risk of inflaming the jury, it does not rise to the

7  level of danger of unfair prejudice posed by gang affiliation evidence, nor does it have the same

8  potential to evolve into a mini trial that would waste time, confuse issues, or mislead the jury.  Thus,

9  Tassio may introduce the toxicology report and related evidence that Galindo was under the

10  influence of methamphetamine and/or alcohol at the time of the shooting.  However, any evidence

11  of Galindo's alleged drug use unrelated to his intoxication at the time of the shooting, including

12  other drugs or drug paraphernalia found at the scene and allegations of prior drug use, are excluded.

13  Accordingly, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

14        7.  Fuentes' Guilty Plea

15        For the same reasons discussed in number one above with respect to evidence of Fuentes'

16  gang affiliation, Plaintiffs' motion is GRANTED.

17        8.  Expert Testimony of Michael Whittington

18        Michael Whittington is a Gang Investigator with the Santa Clara County DA's office who is

19  designated to testify regarding "gang culture, gang indicia, the gang membership and/or affiliation

20  of witnesses involved in the incident . . . including Valente Galindo and Manuel Fuentes, and the

21  affiliation of the residence located at 2177 Inman Way, San Jose."  Dkt. No. 71, Pl. Mot. in Limine

22  No. 8, at 3 (quoting Defs.' Expert Witness Disclosures).  As discussed above, unless Plaintiffs open

23  the door for it to be used for impeachment or in rebuttal, the only gang affiliation evidence whose

24  probative value is not substantially outweighed by risk of unfair prejudice is that which was known

25  to Tassio and/or Kilmer at the time of the incident and is relevant to their state of mind.  The officers

26  themselves can testify as to this information, and any additional testimony by Whittington on the

27  same matters would be unnecessarily duplicative as well as increase the risk of unfair prejudice.

28

1   Accordingly, Plaintiffs' motion to exclude Whittington's testimony is GRANTED, subject to

2   Tassio's right to introduce such testimony for impeachment or in rebuttal.

3       B.  Tassio's Motions in Limine

4       Tassio moves to exclude the following: (1) "prior bad acts" of the officers; (2) photos of

5   Galindo's injuries at the scene and hospital; (3) photos of Galindo handcuffed; (4) testimony of

6   police procedures expert Roger Clark; (5) reference to Rodney King and other riots; and (6)

7   Galindo's statement that he did not reach for the gun.  *See* Dkt. Nos. 63-68.

8           1.   "Prior Bad Acts" of Involved Officers

9       This motion was previously granted without prejudice to Plaintiffs to notify the Court of a

10  particular act and attempt to make the requisite preliminary showing of relevance.

11          2.  Photos of Galindo After Shooting

12      The Court agrees with Plaintiffs that Exhibits 130 through 132 are relevant to show the

13  location of Galindo's body after he was shot and to explain the presence of multiple blood stains on

14  the bed.  Moreover, they are not particularly gruesome photos that are substantially more prejudicial

15  than probative, and are therefore admissible.  However, Exhibits 133 and 134 are gratuitously

16  graphic photos of Galindo on the ground receiving medical treatment and are excluded.

17  Accordingly, Tassio's motion is GRANTED IN PART and DENIED IN PART.

18          3.  Photos of Galindo Handcuffed

19      Tassio also objects to the above referenced photos because, although the handcuffs have

20  been "airbrushed" or otherwise edited out, the position of his hands still suggest he is handcuffed.

21  While it may be apparent to those who already know, the Court does not think that will be so for a

22  juror, at least not to the extent that the risk of prejudice substantially outweighs the probative value

23  of the photos.  Accordingly, the motion is DENIED.

24          4.  Expert Testimony of Roger Clark

25      Tassio moves to exclude several opinions expressed by Plaintiffs' police practices expert

26  Roger Clark on the grounds that they are improper opinions on ultimate issues, including legal

27  conclusions, which are not helpful to and invade the exclusive province of the jury.  *See, e.g.,*

28  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert

**United States District Court**
For the Northern District of California

6

**United States District Court**
For the Northern District of California

1   witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of

2   law."). Specifically, Tassio requests that the Court exclude the following opinions: (1) whether the

3   officers' entry into the Galindo residence was reasonable; (2) whether Tassio's use of force was

4   reasonable; (3) that Tassio should have used less intrusive alternatives than shooting Galindo; (4)

5   that Tassio violated Galindo's constitutional rights. Plaintiffs assert that Clark's opinions, including

6   as to the reasonableness of Tassio's actions, are relevant and helpful to the jury; therefore, they are

7   admissible notwithstanding that they may constitute opinions on ultimate issues. *See* Fed. R. Evid.

8   704 ("An opinion is not objectionable just because it embraces an ultimate issue.").

9           The parties each cite to cases in this district where Clark's opinion as to an officer's

10  reasonableness has been admitted/excluded in support of their respective positions. *Compare*

11  *Valiavicharska v. Celaya*, No. CV 10-4847 JSC, 2012 U.S. Dist. LEXIS 8191, at [9-10] (N.D. Cal.

12  Jan. 24, 2012) (excluding opinion testimony of Clark) ("In excessive force cases, an expert may not

13  opine on whether the Defendants' use of force was reasonable under the circumstances as this is just

14  such an opinion on an ultimate issue of law that risks usurping the jury's province." (internal

15  quotation marks omitted)), *with Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1177 (N.D. Cal.

16  2009) ("Plaintiff's police practices expert, Roger Clark, testified that Officer Cardoza's use of the

17  carotid hold was unreasonable and excessive under the circumstances. . . . The testimony of [the]

18  police practices experts supported the conclusion that the use of this force under these circumstances

19  was unreasonable and excessive.").

20          A fine line separates opinions on ultimate issues which are proper from those which are

21  improper, and here the distinction turns on the helpfulness to the trier of fact in view of the specific

22  circumstances of the case. With respect to the four opinions of Clark cited by Tassio, the Court

23  draws the line as follows. Whether Tassio violated Galindo's constitutional rights is an ultimate

24  issue of law on which Clark may not opine. Similarly, Clark may not give his opinion as to whether

25  Tassio's entry into the home or use of force against Galindo was "reasonable." Here, "reasonable"

26  has an eminently significant legal connotation such that Clark's opinion as to the reasonableness of

27  Tassio's entry or use of force constitutes a legal conclusion that risks usurping the jury's role.

28  Likewise, he may not opine that Tassio "should have" used less intrusive alternatives relative to

United States District Court
For the Northern District of California

1    constitutional standards of reasonableness.  However, he may testify that Tassio "should have" used

2    less intrusive alternatives in order to comply with the applicable POST standards or other rules of

3    police conduct or procedure.  Such is not an opinion on an ultimate issue of law but on a relevant

4    issue of fact based on his technical knowledge of and expertise in police practices, and it may be

5    helpful to the jury in ultimately deciding whether Tassio acted reasonably or deprived Galindo of his

6    constitutional rights.  Accordingly, Tassio's motion is GRANTED IN PART and DENIED IN

7    PART.

8        5.   Reference to Rodney King and other Riots

9        This motion was granted on the record at the pretrial conference.

10       6.   Statement of Galindo

11       Tassio moves to exclude the statement of Galindo "immediately following the shooting

12   wherein he is asked why did he pick up the gun and he [responded], 'I didn't, sir.'"  Dkt. No. 68,

13   Def. Motion in Limine No. 6, at 1.

14       The parties dispute whether Galindo subjectively believed his death to be imminent such that

15   the statement constitutes a "dying declaration."  *See* Fed. R. Evid. 804(b)(2).  Regardless, though,

16   the statement is admissible as an "excited utterance."  *See* Fed. R. Evid. 803(2) ("statement relating

17   to a startling event or condition, made while the declarant was under the stress of excitement that it

18   caused.").  Here, Galindo's statement that he did not pick up the gun related to the startling event or

19   condition of him getting shot, and it would certainly seem that he was still under the stress of the

20   excitement caused by getting shot when he made the statement.

21       Furthermore, the Court agrees with Plaintiffs that the statement should be admitted under the

22   residual exception because (1) the statement has circumstantial guarantees of trustworthiness

23   equivalent to the "dying declaration" and "excited utterance" exceptions; (2) whether Galindo

24   picked up the gun is a material fact; (3) Galindo's own statement as to whether he picked up the gun

25   is more probative than any other available evidence, including the statements of Tassio and

26   Barragan; (4) it serves the interests of justice to admit a statement of the decedent whose

27   constitutional rights were allegedly deprived; and (5) Tassio received notice of the statement.  *See*

28   Fed. R. Evid. 807.  Accordingly, Tassio's motion is DENIED.

8

C. Exhibits

In addition to the exclusion of 133 and 134 discussed above, the following exhibits shall be redacted or are excluded in their entirety based on the rulings herein:

- No. 101-P is excluded (evidence of drug paraphernalia)

- No. 101-Q is excluded (evidence of drug paraphernalia)

- No. 112 shall be redacted (evidence of Galindo's gang-related tattoos)

- No. 114 is excluded (evidence Galindo's alleged gang affiliation)

- No. 115 shall be redacted (evidence of gang affiliation, drugs, criminal history, etc.)

- No. 117 is excluded (evidence of unemployment)

- No. 118 is excluded (evidence of Galindo's criminal history)

- No. 119 is excluded (evidence Fuentes' gang affiliation)

Accordingly, the parties shall remove/redact these exhibits or prepare new exhibit binders to present the jury.  However, they need not lodge new exhibit binders with the Court.

**IT IS SO ORDERED.**

Dated: June 19, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

9

**United States District Court**
For the Northern District of California

1    **C13-00105 HRL** N**otice will be electronically mailed to:**

2    Jaime Alejandro Leanos     jleanoslaw@pacbell.net, florysel-leanos@pacbell.net,
vdewanlaw@gmail.com

3

4    Nora Valerie Frimann     cao.main@sanjoseca.gov

5    Paul Francis Caputo     paul@caputolaw.com, marsha@hawkins-law.com

6    Randolph S. Hom     randolph.hom@sanjoseca.gov, cao.main@sanjoseca.gov

7    **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10